GEVA BAUMER, ESQ., State Bar #220046
Law Offices of Geva Baumer
1904 Franklin St., Suite 312
Oakland, CA 94612
Tel: (510) 500-4474 Fax: (510) 868-1044
geva@baumeratlaw.com

Attorney for Debtor

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| In Re:<br><br>**Nehemias A Garcia-Calderon**<br><br>Movant(s)/Debtor(s) | Case No.: 11-72904<br>Chapter 7<br>Debtor's memorandum of points and authorities in support of a Motion for Contempt re: discharge injunction and damages<br><br>Date: May 29, 2020<br>Time: 11:00 a.m.<br>Location: 1300 Clay St., Oakland, CA 94612<br>Courtroom: 215<br>Judge: Hon. Charles Novack |

## I.
## JURISDICTION

1. This Court has subject matter jurisdiction to hear this motion because it arises from and is related to the above captioned case under Title 11. 28 U.S.C. §1334.

2. This is a core proceeding pursuant to 28 U.S.C. section 157(b)(2), because it involves a matter concerning the administration of the estate, giving this court personal jurisdiction. In addition, Bankruptcy courts may impose contempt sanctions when "necessary or appropriate" to enforce their own orders. 11 U.S.C. 105(a). This court has personal jurisdiction over the parties in this case. 28 U.S.C. §157

POINTS AND AUTHORITIES – CONTEMPT MOTION
- 1 -

3. Venue lies in this district pursuant to 28 U.S.C. § 1391(b).

4. The Ninth Circuit Court of Appeals has held that contempt proceedings for violation of the discharge injunction must be initiated by motion under Rule 9014 and not by adversary proceeding. *Barrientos v. Wells Fargo Bank, N.A.,* 633 F.3d 1186, 1190-91 (9th Cir. 2011).

II.

PARTIES AND FACTUAL BACKGROUND

5. Nehemias A Garcia-Calderon ("Debtor" or "Movant") is the Debtor in the above captioned Chapter 7 bankruptcy case ("Bankruptcy Case"). The Debtor lives with his spouse and 2 minor children (ages 2, 3) in the city of Richmond, California. Debtor was born in Guatemala and immigrated to the U.S.A. with his parents when he was a child. He works as mechanic for AC transit. He is the sole bread earner in his household (Garcia-Calderon Dec. 1:17-22)

6. Respondent Ford Motors Credit Company LLC ("Ford Credit" or "Creditor") is a limited liability corporation incorporated under the laws of the State of Delaware with its corporate headquarters located in the city of Dearborn, Michigan. Ford Credit is doing business also under the business name "Mazda American Credit" (Baumer Dec. 1:27-2:4).

7. Respondent Nelson & Kennard ("NK Law Firm") is a law partnership with its main office located in 5011 Dudley Blvd., Building 250, Bay G, McClellan, CA 95652 (Baumer Dec. 2:5-7).

8. On or about October 26, 2009, the creditor Ford Credit filed a lawsuit against the Debtor for damages due to a repossessed vehicle with the Superior Court of California, Contra Costa County, Case CIVML09-10431 ("Civil Case"). At all times Ford Credit was represented by the NK Law Firm (Garcia-Calderon Dec. 1:23-2:1).

9. On or about March 9, 2010, Ford Credit obtained a monetary judgment against the Debtor for the amount of $13,274.45 ("Civil Judgment"). On July 19, 2010, Ford Credit recorded an abstract of judgment on the Civil Judgment with the County of Contra Costa Recorder (Garcia-Calderon Dec. 2:2-6).

POINTS AND AUTHORITIES – CONTEMPT MOTION
- 2 -

Case: 11-72904    Doc# 20-1    Filed: 04/24/20    Entered: 04/24/20 11:48:54    Page 2 of 9

10. On December 10, 2011, the Debtor filed the above Chapter 7 bankruptcy case with the U.S. Bankruptcy Court for the Northern District of California, Oakland Division ("Bankruptcy Case").  The Civil Judgement was one of the main reasons for the bankruptcy filing (Garcia-Calderon Dec. 2:7-10).

11. The Creditor and their attorneys the NK Law Firm were listed in the Debtor's bankruptcy schedules and had received notice of the Discharge Order (the Creditor was listed under its business name "Mazda American Credit") (Garcia-Calderon Dec. 2:13-15). The NK Law Firm made a note of the bankruptcy discharge (Baumer Dec. 3:1-2).

12. Once the Debtor received his bankruptcy discharge, he believed that Ford Credit or the NK Law Firm will comply with the Discharge Order and will not attempt to collect on the Civil Judgment (Garcia-Calderon Dec. 2;16-18).

13. On or about December 20, 2017, (about 6 years after the filing of the Bankruptcy Case) the Debtor and his spouse purchased their home located in 617 Johnson Drive,Richmond CA 94806 ("Subject Property"). They obtained a mortgage in order to finance the purchase.  The current servicer of their mortgage is Arvest Bank. The Debtor is currently making ongoing mortgage payments, which include principal and annual interest of 4.75%. Considering that the Debtor and his spouse live on one salary only, they are struggling to make their ongoing mortgage payments and also their household expenses (Garcia-Calderon Dec. 2:19-26).

14. Civil Judgement was never renewed by Creditor and it had completely lapsed on March 8, 2020 (see Civil Case docket, Exhibit A to the dec. of Garcia-Calderon).

15. Recently the Debtor and his spouse applied to refinance their home mortgage. The purpose of the refinance was to replace the current mortgage, which carry an annual interest of 4.75%, with a more affordable rate of 3.30%.  It is anticipated that this interest reduction will save the Debtor and his spouse hundreds of dollars every month. In order to finalize the refinance, an escrow was opened with Old Republic Title Company ("Title Company") (Garcia-Calderon Dec. 2:28-3:4).

16. On April 10, 2020, the Creditor through the NK Law Firm made a demand for the amount of $26,526.75 to the Title Company based on the Civil Judgment. On Friday April 10, 2020, Debtor's mortgage broker informed him that if he wishes to move forward with the refinance, he must pay the Civil Judgments in the amount of $26,526.75. This would result in a much higher loan and higher payments than anticipated (Garcia-Calderon Dec. 3:5-10).

17. When the Debtor heard about the Escrow Demand, he became extremely nervous. He hardly slept over the weekend.. He also felt deceived by his bankruptcy attorney, who informed him at the time of the bankruptcy filing that he did not have to worry anymore about the Civil Judgment. He decided to contact his bankruptcy attorney. On Monday April 13, 2020, the Debtor contacted his bankruptcy attorney, Mr. Geva Baumer. Mr. Baumer informed the Debtor that he would need to conduct a research and subsequent to such research, he would then try to resolve this matter (Garcia-Calderon Dec. 3:14-21), Baumer Dec. 2:8-12).

18. In order to research this matter, Debtor's attorney obtained records from the Superior Court for the County of Contra Costa, the Bankruptcy Court, the County of Contra Costa Recorder and Chicago Title Company. Debtor's attorney determined that by making the Escrow Demand, the NK Law Firm and/or Ford Credit violated the Debtor's discharge injunction. Because a delay in closing the escrow could greatly damage the Debtor, Debtor's attorney decided to attempt to mitigate the Debtor's damages by addressing the violation directly with the NK Law Firm (Baumer Dec. 2:13-18).

19. On or about April 13, 2020, Debtor's attorney transmitted to the NK Law Firm a letter with exhibits, explaining that NK Law Firm and Ford Credit are violating the Debtor's discharge injunction. In the letter Debtor's attorney demanded that Respondents amend the Escrow Demand to -0- and compensate the Debtor for his legal fees and costs incurred due to the discharge violation (Baumer Dec. 2:17-28).

20. On or about April 14, 2020 at 3:00 PM, Debtor's attorney called the NK Law Firm. The call was answered by a receptionist. Debtor's attorney explained that he

Case: 11-72904　Doc# 20-1　Filed: 04/24/20　Entered: 04/24/20 11:48:54　Page 4 of 9

wishes to follow up on a letter he sent concerning a discharge violation. Initially the receptionist informed him that the case was closed in their office due to bankruptcy. When Debtor's attorney explained that the NK Law Firm were still collecting on the discharged judgment and referred her to the Escrow Demand, Debtor's attorney was transferred to attorney Kristen Sleezer (the same attorney who signed the Escrow Demand). Debtor's attorney explained to Ms. Sleezer that her law firm was violating the Debtor's discharge injunction and referred her to his letter (Baumer Dec. 3:1-9).

21. On April 14, 2020, the Respondents withdraw their Escrow Demand (Baumer Dec. 3;10-12).

22. Due to the Respondents' violation of the Discharge Order, the Debtor incurred damages (Garcia-Calderon Dec. 4;13-27).

23. On April 15, 2020, Debtor's attorney received an email from attorney Sleezer. She proposed that the Debtor bear his own costs and attorney fees in the matter. Debtor's attorney responded that it is inequitable to require the Debtor to bear his own expenses and attorney fees incurred to the Creditor's willful violation of discharge. At Ms. Sleezer's request, Debtor's attorney provided her with a breakdown of the attorney fees and costs incurred by the Debtor due to the discharge violation (Baumer Dec. 3:10-17).

24. On April 17, 2020, Debtor's attorney received a letter from Mr. Robert Kennard, a partner in the NK Law Firm. According to Mr. Kennard's letter, the creditor <u>will not</u> agree to pay any of the Debtor's fees and expenses incurred due to the discharge violation, because the Debtor did not meet and confer with the Creditor's attorney by phone prior to incurring expenses and fees (Baumer Dec. 3:18-23).

25. By transmitting the Escrow Demand to the Title Company, the Creditor through the NK Law Firm acted in an oppressive manner and tried to take advantage over the Debtor. They knew that they were not entitled for that amount, as the debt had been discharged in Debtor's bankruptcy and also because more than 10 years had passed since the Civil Judgment was made. Ford Credit through the NK Law Firm simply tried to take advantage

of the Debtor, knowing that he is not sophisticated and does not know the law. Once the Respondents learned that the Debtor retained a competent bankruptcy representation in this matter, they backed off (Garcia-Calderon Dec. 4:1-10).

26. Due to the Respondents' bad faith actions and the damages incurred, the Debtor was forced to move to reopen his bankruptcy case and to file this motion for contempt and damages.

### III.
### LEGAL ARGUMENT

**A. Violation of the Discharge**

27. Section 524 of the Bankruptcy Court embodies the "fresh start" concept and provides that a discharge operates as an injunction against the commencement or continuation of an action. Section 524(a) of the Bankruptcy Code, provides in part:

> **"(a) A discharge in a case under this title—
> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1192, 1228, or 1328 of this title, whether or not discharge of such debt is waived;
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and
> ...."**

28. The underlined Civil Judgment was entered due to a deficiency claim on a repossessed vehicle. A debt incurred due to breach of contract, such as this underlined debt, is dischargeable in bankruptcy, because it does not fall under any of the exceptions to discharge. See 11 U.S.C. § 523(a).

29. A party who knowingly violates the discharge injunction under § 524(a)(2) can be held in contempt under Bankruptcy Code § 105(a). See *ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.)*, 450 F.3d 996, 1007 (9th Cir. 2006); *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir. 2002);

30. To be subject to sanctions for violating the discharge injunction, a party's violation must be "willful." The party seeking contempt sanctions has the burden of proving, by clear and convincing evidence that the alleged contemnor "(1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction." *In re ZiLOG, Inc.,* 450 F.3d at 1007.

31. A discharge in bankruptcy makes a pre-bankruptcy judgment lien ineffective as to any real property interests acquired by the Debtor <u>after</u> the commencement of his bankruptcy proceedings. See 11 U.S.C. §524(a)(3); And see *Leasing Service Corp. v. Justice*, 416 S.E.2d 439 (Va. 1992)**.**

32. A court may hold a creditor in civil contempt for violating the discharge if there is no fair ground of doubt as to whether the order barred the creditor's conduct. In other words, civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful. See *In re Taggart*, 139 S. Ct. 1795 (2019).

33. <u>Violation of the Discharge</u> - The facts of this case demonstrate that Respondents violated the Debtor's bankruptcy discharge, as they attempted to collect on a discharged debt in violation of the discharge injunction. The transmission of the Escrow Demand to the Title Company, was a "continuation of an action, the employment of process, or an act, to collect, [or] recover" the Debt, which is prohibited by the discharge injunction. 11 U.S.C. § 524(a)(2). As such, Movant is entitled to actual damages for attorneys' fees. *Walls v. Wells Fargo Bank, N.A.* (supra), 276 F.3d. at 507.

34. The Respondents cannot argue that the collection action is an in rem action and thus permissible, as they attempted to collect on a pre-bankruptcy lien against a real property that was purchased many years after the bankruptcy.

35. <u>Discharge Violation was Willful</u> – The discharge violation was clearly willful. The Respondents knew about the bankruptcy discharge, as they were listed in the bankruptcy schedules and received a notice of the discharge order. The NK Law Firm marked the Civil Judgment as "discharged in bankruptcy", and stopped all collection actions on it forover 8

years.. The Respondents intended the action that led to the discharge violation, as they intended to transmit the Escrow Demand to the Title Company. The NK Law Firm is a law firm that mainly deals with debts collection. Thus, it presumed to know the effect of the discharge injunction on the Civil Judgment and the consequences of violating the discharge.

36. <u>There is no objectively reasonable basis for concluding that the creditor's conduct might be lawful</u> – The Respondents actions clearly violated the bankruptcy discharge. The Respondents cannot argue that there is a reasonable basis for concluding that their actions were lawful as no such reasonable basis exists.

37. <u>The Court may award Debtor's damages, emotional damages and attorney fees incurred due to the discharge violation</u> – see *In re Breul*, 533 B.R. 782, 797 (Bankr. C.D. Cal. 2015).

38. <u>There is no basis to the Respondents' contention that recovery is not warranted, since the Debtor did not made a prior telephonic meet and confer call to the NK Law Firm</u> - There is no case law that support the Respondents' contention. Due to the Respondents' oppressive actions and the potential huge damages which could have been caused due to the violation, the Debtor was forced to retain a bankruptcy attorney. Debtor's bankruptcy attorney had to conduct research and write a lengthy letter, explaining the discharge violation and the consequences. The purpose of addressing this matter directly with the NK Law Firm, was to mitigate the Debtor's damages, which could have resulted in additional cost of many thousands of dollars. The Respondents' attempt to get a "free pass", only because the Debtor attempted to mitigate his damages, must be rejected.

39. <u>Punitive Damages</u> - An award of punitive damages requires "some showing of reckless or callous disregard for the law or rights of others." *In re Bloom*, 875 F.2d 224, 228 (9th Cir.1989). In some instances, punitive damages are an appropriate remedy for a discharge violation. See *In re Breul*, 533 B.R. 782, 797 (Bankr. C.D. Cal. 2015). The facts of this case justify imposition of punitive damages. Respondents clearly knew that there was no basis for the Escrow Demand. Clearly, the Civil Judgment was discharged in the

POINTS AND AUTHORITIES – CONTEMPT MOTION

- 8 -

Case: 11-72904    Doc# 20-1    Filed: 04/24/20    Entered: 04/24/20 11:48:54    Page 8 of 9

bankruptcy, Even if there was no bankruptcy, the enforcement of the Civil Judgment would be barred, as more than 10 years had passed since the entry of the Civil Judgment and the Civil Judgement was not renewed. The Respondents simply attempted to take advantage over the Debtor, exploiting his ignorance of the law and his financial urgent needs to complete the refinance process. The Respondents actions were oppressive, egregious and demonstrated a complete disregard of the law and the Debtor's rights. The Court must sanction Respondents by awarding substantial punitive damages in order to prevent Respondents from repeating this behavior.

**WHEREFORE,** Movants pray for relief as follows:

A. Declaratory relief that **Respondents are in civil contempt of this Court by violating the discharge injunction**;
B. Sanctions for violating the discharge injunction in the form of reasonable attorney fees of and costs, according to an application which will be filed under a separate cover;
C. Actual damages in an amount according to proof;
D. Emotional distress damages in an amount according to proof;
C. Punitive damages for egregious conduct in willful violation of this Court's orders;
D. Such other and further relief as the Court may deem just and proper.


                                                        /s/ Geva Baumer

Date: <u>April 24, 2020</u>

                                                  Respectfully Submitted,
                                                  By: Geva Baumer, Movant's attorney